## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GUATEMION MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-04658-TWP-MJD |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY GRANTING TARGET'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Target Corporation's ("Target") Motion for Summary Judgment (Filing No. 42). Following his termination from Target's distribution warehouse, Plaintiff Guatemion Mosley ("Mosley") filed this action alleging: (1) disability discrimination in violation of the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964, (2) violation of the Family Medical Leave Act, and (3) retaliation in violation of Indiana law. (Filing No. 1.) For the following reasons, Target's Motion for Summary Judgment is **granted**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Mosley as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Target operates regional distribution center T559 in Indianapolis, Indiana ("T559"). (Filing No. 44-1 at 2.)   Employees at T559 receive shipments of merchandise from other distribution centers or suppliers and then sort, store, and ship the merchandise to Target stores for

sale to customers. *Id.* The vast majority of employees at T559 are "warehouse workers" assigned to work in one or more departments including inbound, outbound, and warehousing. *Id.* Warehouse workers are expected to be able to work in all of these departments. *Id.* Employees sometimes work in more than one of these departments in a single shift. *Id.* at 3; Filing No. 44-3 at 7-8. Warehouse workers constantly lift, move, carry, place, and manipulate boxes, pallets, and individual cartons of merchandise ranging in weight from 1 pound to 60 pounds. (Filing No. 44-1 at 3.) Warehouse workers may be required to lift items from floor level and place items on racks at or above their heads. *Id.* A warehouse worker must be able to lift and carry merchandise weighing up to 47 pounds regularly and up to 60 pounds on an infrequent basis. (Filing No. 44-2 at 115.)

Target hired Mosley on September 15, 2015 as a warehouse worker at T559. *Id.* at 8. He held the same title throughout his employment and was trained to work in the warehousing department. *Id.* at 9, 13-14. In this position, Mosley performed various functions, including operating power equipment to place and remove large cartons or pallets of freight on racks. *Id.* at 13-16. In January 2016, Mosley began working the night shift from 6:00 p.m. to 6:00 a.m., Saturday, Sunday, and Monday. (Filing No. 44-3 at 21-23.) He reported to Operations Managers Daniel Fleener and Joy Landgrebe and earned $18.73 an hour, including a $1.50 an hour shift differential. *Id.* at 21-24; Filing No. 44-2 at 11, 16-17, 22-23, 49.

On March 20, 2016, Mosley suffered an on-the-job injury. (Filing No. 44-2 at 23-25.) Target sent him to receive treatment the same day and his physician gave him work restrictions. *Id.* at 25-28, 116. Between March 20 and June 13, 2016, Mosley's work restriction grew less severe, but he was still restricted enough that he could not perform his job after he became injured. *Id.* at 45-47, 52-54, 60-61, 64-65, 71-72, 78-79, 81-83, 116, 118-123.

If a warehouse worker suffers an injury on the job, Target provides up to twelve (12) weeks of light duty work to employees consistent with restrictions imposed by the employee's healthcare provider.  (Filing No. 44-1 at 3.)  Because of the physical nature of the warehouse worker position at Target's distribution centers, light duty work is not generally of the type the Team Member worked before the injury. *Id*. Instead, Target provides discrete tasks, which comply with the employee's medical restrictions, to occupy the employee's day and allow the employee time to heal. *Id.*  Target often provides long term or permanent accommodations to employees as cashier at a Target store, because the physical requirements of that position are lower than other positions, including the warehouse worker position. *Id*.

Mosley worked light duty with Target between March 21 and June 13, 2016.  (Filing No. 44-2 at 35-36, 38-39, 44-45, 117.)  During the time that he was working light duty at the distribution center he had difficulties with management asking him to do activities outside of his restrictions, such as repetitive bending and pushing and pulling.  Mosely performed isolated, short-term administrative and light maintenance tasks like laminating, shredding, sorting and counting LEGO toys for a team-building project, sweeping, mopping, cleaning break rooms, folding t-shirts, re-stocking flags, organizing a supply closet, and product labeling.  *Id.* at 32-33, 35-36, 39-42; Filing No. 44-3 at 31-34, 38-40, 54-56.  These tasks were mostly limited projects, and Mosley often did not have enough light duty work to fill his day. (Filing No. 44-2 at 51.)

On June 13, 2016, a Human Resources representative informed Mosley his twelve weeks of light duty period had expired, and because he was unable to perform the functions of his previous job he would need to take a medical leave.  *Id.* at 84-86.  Mosley began a leave of absence and received worker's compensation benefits, which was less than what he was paid in his normal

wages. *Id.* at 87-88. He was not able to work in the warehouse during his leave because of the health problems he sustained from his workplace injury. *Id.* at 88.

On September 25, 2016, Mosley's physician released him from care and issued the following permanent restrictions:

> In an 8-hour work shift, the patient may lift to waist 72 [lbs] occasionally, 30 lbs frequently, and 14 lbs constantly; lift waist to shoulder 47 lbs occasionally, 23 lbs frequently and 9 lbs constantly; push/pull 120/110 [lbs] occasionally, 60/55 frequently, and 24/22 constantly. He may frequently bend, squat, kneel, crawl, climb ladder[s] and stairs, work overhead and at shoulder height.

*Id.* at 124. These restrictions prevented Mosley from performing the duties required of a warehouse worker at Target. *Id.* at 95.

On September 27, 2016, Mosley discussed his permanent restrictions with Lewis Johnson ("Johnson"), a human resources manager at Target. *Id.* at 95-98; Filing No. 44-4 at 6, 37. The two agreed that Mosley was not able to perform the duties of a warehouse worker because of his restrictions. (Filing No. 44-2 at 96-97; Filing No. 44-4 at 38-39.) Mosley could have still performed the light work duties that were provided to him for twelve weeks and/or he could have performed the position of a packer. However, Johnson told Mosley that he was unable to perform other open positions at the distribution center including the position of packer. (Filing No. 44-4 at 39-40, 48-50.) Johnson offered Mosley a position working part-time in a Target store at a significant reduction in pay rate and no benefits. (Filing No. 44-2 at 96.) Mosley told Johnson he needed to speak with his legal counsel before making that decision. (Filing No. 44-2 at 96-97.)

On October 13, 2016, Johnson wrote Mosley a letter as a follow-up to their telephone call. (Filing No. 44-2 at 125.) The letter reiterated Mosley's restrictions and recapped their conversation:

> We had a conversation on September 27, 2016, in which we discussed potential accommodations. The goal of our conversation was to discuss if you are able to perform the essential functions of your position or any vacant position, if one exists,

for which you are qualified. During our conversation I offered you the accommodation of a position within Target stores.

*Id.* The letter said that if Mosley did not contact Johnson by October 19, 2016 Target would assume that he was not interested in returning to work and would "administratively separate [his] employment." *Id.* Johnson wrote Mosley a second letter on October 21, 2016 reiterating Target's position and asking Mosley to contact him. *Id.* at 126. On October 25, 2016 the two spoke again by telephone. (Filing No. 44-4 at 41-42, 51-53.) Mosley told Johnson he was unable to do any job at the distribution center or a Target store. *Id.* Mosley told Johnson he planned to challenge his final restrictions and Johnson asked Mosley to update him on the status of that challenge within thirty days. *Id.*

In late November 2016, another human resources employee at Target, Chad Molinder ("Molinder"), contacted Mosley. (Filing No. 44-2 at 101.) In that conversation, Mosley told Molinder that Target had to offer him a job that was comparable to his previous position and salary, and that that he was capable of doing the light duty work the company had given him in the twelve weeks immediately following his injury. *Id.* at 102. Molinder dismissed that idea. *Id.* Molinder told Mosley he could take a job in a store or apply for other jobs that he thought he was qualified for and capable of performing. *Id.* Mosley looked at Target's website, but the only job postings he found were for positions in a store, which Mosley was uninterested in, or for jobs in a warehouse that violated his permanent restrictions. *Id.* at 104-05. Target terminated Mosley on January 1, 2017. (Filing No. 44-1 at 4.)

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

#### A. The Facts

As an initial matter, the Court must first address Target's contention that its statement of facts should be taken as undisputed. (Filing No. 55 at 2.) Under the Court's Local Rules, a non-

movant must, in response to a summary judgment motion, "include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." Local Rule 56-1(b). Mosley did not include this section in his response brief, although elsewhere within it he attempts to dispute facts recited by Target.[1] The Seventh Circuit has said that a "failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

In this case, the Court need not decide whether Mosley's omission of a "Statement of Material Facts in Dispute" section amounts to an admission to the facts as Target recounts them. Mosley's factual disputes are immaterial, or the record does not support them, or in some cases, because Mosley mistakes issues of law for issues of fact. The Court will address the facts Mosley asserts are disputed as they arise in each argument.

## B.   The Arguments

Mosely asserts three claims: Count 1: Target discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Count 2: Target violated the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, ("FMLA"), and Count 3: Target retaliated against him for seeking worker's compensation benefits in violation of Indiana law as stated in *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425 (Ind. 1973). (Filing No. 1.) Target seeks summary judgment on all three claims. The Court will address each claim in turn.

---

[1] For example, in the subsection of his argument titled "Mosley is a qualified individual with a disability," Mosley asserts "[t]here is a genuine issue of material fact concerning that availability of an alternate position that would have accommodated Mosley." (Filing No. 45 at 9.)

1.     **Count I: Mosley's Disability Claim**

Count I alleges that Target "intentionally and willfully discriminated against Mr. Mosley because he is disabled and/or because Mr. Mosley has a record of being disabled and/or because [Target] regarded Mr. Mosley as disabled." *Id.* at 5. Mosley alleges that similarly situated non-disabled employees were treated more favorably with regards to the conditions of their employment in violation of the ADA and Title VII of the Civil Rights Act of 1964. *Id.*

Target offers two arguments why this claim should not survive summary judgment. First, it contends Mosley is not a qualified individual with a disability under the terms of the ADA. (Filing No. 43 at 9.) And second, Mosley's claim fails because Target offered him a reasonable accommodation when he was injured, and Mosley declined that offer. *Id.* at 11.

a.     **Mosley Is Not a Qualified Individual with a Disability.**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" in job application procedures and in the hiring or advancement of employees. 42 U.S.C. § 12112(a). An ADA plaintiff hoping to survive summary judgment must show there is a genuine issue of material fact as to whether "(1) she is disabled; (2) she is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013) (citing *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 622 (7th Cir. 2012)). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Important factors for determining whether a plaintiff is a "qualified individual" are "the employer's judgment as to what functions of a job are essential,

and if an employer has prepared a written description before advertising or interviewing applicants for the job." *Id.*

A reasonable accommodation can mean many things under the ADA, but the parties focus on a few: "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." *Id.* at § 12111(9). "After an employee has disclosed that she has a disability, the ADA requires an employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) (internal quotation and citations omitted). To comply with an ADA request, "an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not a fundamental work alteration." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001).

Target argues that Mosley is not a qualified individual under the Act "because he is not able to perform the essential functions of his job with or without a reasonable accommodation." (Filing No. 43 at 9.) Target compares this case to *Malabarba v. Chicago Tribune, Co.*, 149 F.3d 690 (7th Cir. 1998). In *Malabarba*, the Seventh Circuit rejected the plaintiff's ADA claim when the Chicago Tribune did not allow him to do full-time the part-time, light duty tasks he was assigned after he was injured on the job. The Seventh Circuit held that plaintiff was not a qualified individual to work as a material handler, his old job at the Chicago Tribune, because he was unqualified to carry out the essential functions of that job. *Id.* at 698.

Mosley responds that he is a qualified individual with a disability. Target's job description requires that a "Warehouse Worker" be "[a]ble to lift and carry merchandise weighing up to 47 lbs. regularly, and up to 60 lbs. on an infrequent basis." (Filing No. 46 at 2.) But Mosley contends

that Johnson, Target's human resources manager, was not sure whether the job description applied to the entire distribution center or just the warehousing department, although he then supposed that it applied to the entire distribution center.[2] ([Filing No. 45 at 5](#)).

Mosley notes that another manager testified in his deposition that a position in the packing department usually involved dealing with smaller items. ([Filing No. 54-2 at 27](#).) But that manager did not say Mosley would have been able to work in the packing department with his permanent restrictions. Mosley has designated what appears to be two pages printed from Target's website that describe the job of "packer." ([Filing No. 49](#).) In a section called "responsibilities" of a "packing operations team member," the document lists "a few other things we'd like you to have," which includes the "[a]bility to lift at least 30 lbs, accurately pack merchandise in store cartons, use technology to scan labels and accurately use basic math skills". Mosley contends that he "could perform the essential functions of the packer position even with his permanent restrictions and he was qualified for the position of packer based on his experience as a warehouse worker." ([Filing No. 45 at 6-7](#).)

This argument is not persuasive for several reasons. First, nothing in the record authenticates the document describing the job of packer. Mosley did not show it to any of the Target employees deposed in this suit, nor did he identify it in his own deposition. Second, no designated evidence shows that a packer position was open at T559 when Mosley was seeking his accommodation. In fact, the designated evidence shows the opposite. During its process of attempting to accommodate Mosley, Target advised him to search for other positions at Target that he thought he was qualified for and could perform with his restrictions. Mosley searched for positions on Target's website but only found open jobs at Indianapolis stores, which he deemed

---

[2] The Court notes that the top of the job description lists both the "pyramid" and the "department" as "Distribution." ([Filing No. 46 at 1](#).)

unacceptable.  (Filing No. 44-2 at 104-05.)  If a "packer" position was available at an Indianapolis warehouse that did not violate Mosley's restrictions, he did not bring it to the attention of the Target managers that Mosely was speaking with at the time or reveal it in his deposition.

Third, the job description from the website provides no context.  It does not say when it was created, what warehouse location it is for, or who created it.[3]  (Filing No. 49.)  Without knowing these things, the document is irrelevant to this case even if it could be authenticated.

And last, as Target points out, Mosley's restrictions would prevent him from doing the job of packer even as described in this document. The description requires a person who can lift 30 pounds, but Mosley's restrictions only allow him to lift to waist 14 pounds constantly (he can lift 30 pounds to his waist frequently) and lift from his waist to shoulder 9 pounds constantly (he can lift 23 pounds frequently and 47 pounds occasionally).  (Filing No. 44-2 at 124.)  Because the description does not say how often a packer must lift 30 pounds and whether he must lift it from the ground to his waist or from his waist to his shoulders, it is unclear even from this description whether Mosley could perform the essential functions of the job.

Next, Mosley contends Target did not engage in an interactive process after he told them of his disability.  The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(*o*)(3). This step imposes a duty on employers to engage in a flexible give-and-take with the disabled employee so that together they can determine what accommodation would enable the employee to continue working.  *Gile v. United Airlines, Inc.,* 213 F.3d at 365, 373.

---

[3] In the upper left-hand corner of each page of the document appears the date "10/9/2018".  The Court is unsure whether this is the date the document was created, the date Mosley accessed it for the first time, or the date it was printed or made into a .pdf document.

Mosely asserts that all of his interactions with Target following his requests for accommodation were "directive and not interactive" and "there was no individualized discussion as to how Mosley's personal restrictions may be accommodated." (Filing No. 45 at 7) He argues that "Target's failure to individually assess Mosley's need for an accommodation resulted in Mosley being informed that there were no positions available within his restrictions at the distribution center, despite evidence to the contrary." *Id.* at 7-8.

The Court disagrees. The designated evidence shows that Target assessed Mosley on an individual basis and adequately engaged him in an interactive process to determine a reasonable accommodation. When Mosley was injured, Target immediately placed him on light duty work and paid for him to see doctors at OrthoIndy for an individual assessment of his injury. Doctors at OrthoIndy examined him at least five times. (Filing No. 44-2 at 119-121, 123-124.) They completed an individualized assessment of Mosley and, at the end of that assessment, identified that his injuries caused him to have permanent work restrictions. *Id.* at 124. This satisfied Target's requirement under the ADA to conduct an individualized inquiry to determine whether Mosley was disabled and how it could accommodate his disability. After that individualized assessment, Target engaged in an interactive process with Mosley to determine the appropriate accommodation. When Target learned of Mosley's permanent restrictions, a human resources employee called Mosley to discuss his options. *Id.* at 95-98; Filing No. 44-4 at 6, 37. Overall, Mosley spoke to human resources three times by telephone, and they contacted him twice by mail during his medical leave.

Although Mosley agreed that he was unable to continue doing his previous job, he disagreed with the human resources managers about the accommodations Target was required to offer him. The Target employees offered him part-time work at a Target store and told him that

he could search Target job listings for other jobs that he could perform. During their discussions, it was Mosley's position that Target had to offer him a job that was comparable to his previous position and salary, and that he was capable of doing the light duty work the company had given him in the twelve weeks immediately following his injury. Ultimately, the two parties could not agree on the appropriate accommodation. This shows only that the process was not fruitful, not that it was not interactive.

Both sides communicated their position to the other over a series of telephone calls and letters. They could not reach an agreement. The ADA requires Target to engage in an interactive process to determine the appropriate accommodation, but it does not require Target to give a disabled employee exactly what he asks for even if it is not an appropriate accommodation. Target satisfied its requirement of engaging in an interactive process by communicating extensively with Mosley about his options.

Mosley asserts there are genuine issues of material fact precluding summary judgment. Citing the description of the packing job, he alleges there is an issue of fact "concerning the availability of an alternate position that would have accommodated Mosley." (Filing No. 45 at 9.) As previously noted, the website document has not been authenticated, and even if it were authenticated it would not create an issue of fact because it does not indicate that a packing job was available in Indianapolis when Mosley was seeking accommodation, nor does it show that Mosley could perform the described duties of a packer.

Mosley also contends, "it is a material issue of fact as to whether or not the warehouse worker requirements apply to all distribution center employees or only the employees working in the warehousing department." However, the record does not support a dispute on that issue; the record evidence indicates those lifting requirements apply to the entire distribution center. Lewis

Johnson, a manager at Target, said the requirements probably apply to the entire distribution center. (Filing No. 54-1 at 32-33.) And the document Mosley relies on lists both the "Pyramid" and the "Department" as "Distribution." (Filing No. 46.)

A qualified individual under the ADA is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires." 42 U.S.C. § 12111(8). Mosley made it clear that he could not perform the job that he held prior to his injury and that he wanted another job in the warehouse. But no evidence in the record indicates there was a warehouse job that Mosley could perform with or without a reasonable accommodation. The internet evidence (Filing No. 49) that describes the "packer" position is not admissible, and even if it were it does not indicate that Mosley could perform the essential functions of that job given his permanent work restrictions. Moreover, the ADA might require an employer to accommodate a disabled employee by assigning him to a "vacant position," but no evidence shows there was a vacant packer position in Indianapolis at the time Mosley was seeking an accommodation. 42 U.S.C. § 12111(9). In addition, Target was not required to reinstate Mosley full time doing the light duty tasks he had done in the twelve weeks following his injury. "Although the ADA provides that reassignment to a vacant position may constitute a reasonable accommodation, it does not require that employers convert temporary 'light-duty' jobs into permanent ones." *Malabarba* at 697, (citing *Dalton v. Subara-Isuzu Automotive, Inc.*, 141 F.3d 667, 680 (7th Cir. 1998)).

Because the only positions Mosley desired were in the distribution center, and he could not perform the essential functions of those jobs with or without reasonable accommodation, Mosley is not a qualified individual under the ADA. Thus, his ADA claim against Target fails as a matter

of law. The Court **grants** summary judgment in favor of Target on Count I of Mosley's Complaint—discrimination in violation of the ADA.

### b.    <u>Mosley's claim for failure to accommodate fails for the same reason.</u>

Target also argues that any claim for failure to accommodate under the ADA also fails because it offered Mosley a reasonable accommodation, and he declined it. Target contends Mosley waived any claim for failure to accommodate by not clearly pleading it in his Complaint or listing it in a statement of claims and defenses.[4] Because any failure to accommodate claim Mosley managed to preserve is without merit, the Court need not decide whether he actually preserved that claim.

Mosley's failure to accommodate claim is subject to the same threshold question as his discrimination claim—whether he is a qualified individual under the ADA. To establish a failure to accommodate claim under the ADA, the plaintiff must show that: (1) he is a qualified individual with a disability, (2) the defendant was aware of his disability, and (3) the defendant failed to reasonably accommodate his disability. *Gratzl v. Office of Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Courts*, 601 F.3d 674, 678 (7th Cir. 2010) (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

As the Court stated above, Mosley is not a qualified individual under the ADA. He cannot perform the essential functions of the job he held before his injury either with or without accommodation because of his permanent work restrictions. He does not argue that he can. And he has stated that he desires other jobs in the distribution warehouse but has not designated any

---

[4] The Case Management Plan instructed Mosley to file a statement of claims or defenses on or before October 12, 2018. The docket shows he never filed that document.

evidence that a job he can perform exists in the warehouse.  Target offered the accommodation of a part-time job in one of its stores, but Mosley made it clear that he did not "desire" a job in a Target store.  Because he only desired a job that, regardless of accommodation, he cannot perform the essential functions of due to his work restrictions, Mosley is not a qualified individual.

Therefore, any failure to accommodate claim he leveled against Target fails.

2.      **Count II: Mosley's FMLA Claim**

Count II of Mosley's Complaint alleges that Target violated his FMLA rights by failing to offer him benefits, failing to give proper notice as required by the FMLA, and terminating him in violation of the FMLA.  (Filing No. 1 at 6.)  The FMLA protects employees who must take leave from their job because of a medical issue that they or one of their family members are suffering from.  29 U.S.C. § 2611, *et seq.*  Mosley claims that

> Target failed to discuss the option of FMLA with Mosley during the September 2016 conversation with Johnson or any subsequent conversation. Target did not offer Mosley FMLA because there was never any intention of allowing Mosley to return to work at the distribution center due to his lifting restrictions and Target's discriminatory policy of refusing work to employees with lifting restrictions at the distribution center.

(Filing No. 45 at 18-19.)  Mosley does not identify any specific provisions of the FMLA that Target violated.

Target argues that Mosley's FMLA claim fails because he is not an "eligible employee" under the Act.  (Filing No. 43 at 14-15.)  Under the FMLA, "The term 'eligible employee' means an employee who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. §2611(2)(A).  Target argues that since it hired Mosley on September 15, 2015, and he began his leave on June 13, 2016, he was

not an eligible employee because he had not worked for Target for at least twelve months. ([Filing No. 43 at 15](#).)

Mosley responds that he had been employed with Target for at least a year at the time of his September 26, 2016 conversation with human resources manager Lewis Johnson. ([Filing No. 45 at 18](#).) He also explains that he had worked 40 hours a week from the time he was hired until his leave began, which comes to approximately 1,512 hours total. Thus, Mosley argues, Johnson should have informed him of his rights under the FMLA during that September 26, 2016 telephone call. *Id.*

Mosley's argument misstates the intricacies of the FMLA. Mosely argues it was Target's duty to inform him that he was eligible for FMLA leave, but the FMLA requires the employee to give notice of his intention to take leave. 29 U.S.C. §2612(e)(1) ("In any case in which the necessity for leave under subparagraph (A) or (B) of subsection (a)(1) is foreseeable based on an expected birth or placement, the employee shall provide the employer with not less than 30 days' notice, before the date the leave is to begin…."). Target, the employer, has a duty under the FMLA to –

> post and keep posted, in conspicuous places on the premises of the employer where notices to employees and applicants for employment are customarily posted, a notice, to be prepared or approved by the Secretary, setting forth excerpts from, or summaries of, the pertinent provisions of this subchapter and information pertaining to the filing of a charge.

*Id.* at §2619. Conspicuously, Mosley does not allege Target breached that duty.

More importantly, Mosley has not identified the harm he suffered by not taking FMLA leave. Assuming, *arguendo*, that Mosley became entitled to FMLA leave on September 15, 2016, a year after he was hired, and that he was wrongfully denied that leave, he still did not incur any damages. That is because he was on medical leave for approximately fifteen weeks from

September 15, 2016 until January 1, 2017, when Target terminated his employment. Under the FMLA, Mosley would only be entitled to twelve weeks of leave after his injury. Target gave Mosley a longer leave than he would have received if he had invoked the FMLA.

When an employer has violated the FMLA, the employee may recover damages equal to the amount of (1) the wages, salary, employment benefits, or other compensation he lost by the violation, or (2) in a case in which wages, salary, employment benefits or other compensation were not lost, any actual monetary losses sustained as a direct result of the violation. *Id.* at § 2617. Here Mosley sustained no losses from any violation because he was on medical leave already, and that leave lasted longer than any FMLA leave he would be entitled to. Mosley alleges that he "has suffered emotional and economic damages as a result of the Defendant's unlawful acts," but the Court is at a loss as to what those damages might be on this claim. (Filing No. 1 at 6.) Mosley has not elaborated or designated evidence explaining what damages he suffered from Target's alleged violation of the FMLA.

Mosley's FMLA claim fails because even if Target violated his right to FMLA leave, he has not sufficiently alleged that he incurred damages from the violation. The Court **grants** Target's Motion for Summary Judgment as to Count II of the Complaint—Mosley's FMLA claim.

### 3. Count III: Mosley's Retaliation Claim

The Indiana Supreme Court held in *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425, 428 (Ind. 1973) that:

> an employee who alleges he or she was retaliatorily discharged for filing a [worker's compensation claim] has stated a claim upon which relief can be granted. We further hold that such a discharge would constitute an intentional, wrongful act on the part of the employer for which the injured employee is entitled to be fully compensated in damages.

A retaliatory discharge claim under Indiana law requires the claimant to "present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination." *Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 351 (Ind. Ct. App. 2016). If the plaintiff presents that evidence, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the discharge. *Id.* If the defendant does so, the plaintiff then has an opportunity to prove that the reason cited by the defendant is a pretext. *Id.*

In Count III, Mosely alleges that Target retaliated against him for seeking worker's compensation benefits when it "intentionally and willfully refused to accommodate Mr. Mosley's disability caused by his work injury and failed to allow him to return to his employment." *Id.* at 7. He alleges that "[s]imilarly situated individuals who were not seeking worker's compensation benefits were treated more favorably in the terms, privileges and conditions of their employment." *Id.*

Target asserts that Mosley has pointed to no evidence that his worker's compensation claim motivated his termination and he was terminated because his injury prevented him from doing his job, not because he sought worker's compensation benefits. (Filing No. 43 at 15.) Mosley responds that Target treated him differently than it would treat someone who suffered an injury on personal time even if that injury required the same workplace restrictions. (Filing No. 45 at 17.)

The evidence Mosley relies on for his retaliation claim is a passage from the deposition of Target's` human resources employee Johnson. In his deposition, Johnson explained that the light-work period Target gave Mosley after his workplace injury was different than how the company would accommodate someone with a fear of heights. Target would accommodate the hypothetical acrophobe's disability by permanently relocating him to a position that did not involve heights. In

response to this explanation, Mosley's counsel asked Johnson how they would handle someone who had acquired work restrictions from an injury that was not suffered on the job:

Q. What if they weren't injured at work but had restrictions? Say they injured their back at home, but they had light work restrictions, or is it under the same 12 weeks rule?

A. No. No. The 12 weeks are for work-related injury, 12 weeks of light duty. So if someone injured themselves at home and they had to be off of work, for example, they would have just used the FMLA, Family Medical Leave Act, to protect their attendance.

Q. Okay. So if they weren't hurt at work, they were hurt at home and had these restrictions, would they be accommodated or not?

A. Well, if someone was hurt at home and they sprained their ankle really bad, their doctor may have just put them out of work. They would then have to get their time protected through FMLA, so the two are independent.

Q. Okay. What if the doctor didn't put them out of work but just gave them restrictions like [Mosley's] restrictions, you know, weight lifting restriction and things like that? They could work, but they have to work under these restrictions?

A. If they were not injured at work, there was not necessarily a requirement for us to accommodate that. If it was a personal matter, we would have recommended—if you need time off work, you can go and talk to your doctor get FMLA.

Q. Okay. I want to make sure I'm clear. You don't accommodate those restrictions at all if it's not an injury that's work related or happened at work?

Ms. Connor: Objection. Misstates his testimony.

Q. Right. So if that's wrong, clarify. Tell me.

A. That is incorrect. Someone could be afraid of heights and have nothing that's documented, and we could say, okay, we'll move you to another area.

Q. I'm talking about restrictions. If someone has a lifting restriction and movement restrictions from an injury or disability that did not occur at work, it's just a disability or an injury they have outside of something at work, does Target accommodate it at all?

A. They could.

Q. Okay.

A. As long as it was reasonable, it could be accommodated.

Q. Okay.

A. But it's not a guarantee, in that case.

Q. Okay. Is that limited to 12 weeks only also, or can it go longer than 12 weeks?

A. 12 weeks is only for the light-duty work if you were injured at work.

Q. Okay.

A. So someone could essentially have a complication with asthma, let's say, and then there's dust in a certain area of the distribution center that irritates their asthma. We would accommodate that indefinitely without any type of paperwork from a doctor, although it's not work related.

(Filing No. 54-1 at 43-45).

Mosley characterizes that passage as "testimony stating that only worker's compensation cases are limited to being accommodated for twelve (12) weeks but that employees with other types of restrictions not related to worker's compensation are accommodated as needed without a time limit; this is blatant retaliation against employees seeking worker's compensation benefits." (Filing No. 45 at 16.)

To the contrary, the Court does not consider that passage to be evidence that Target retaliated against Mosley for filing a worker's compensation claim, or that it retaliates against all Target employees who file worker's compensation claims. Rather, the circular conversation quoted above demonstrates that the Target's human resources department takes a case-by-case approach, giving light duty work to an employee who has restrictions on what he can lift, but permanently reassigning an employee whose fear of heights prohibits him from working in his current position.

Mosley is not correct when he says, "only worker's compensation cases are limited to being accommodated for twelve (12) weeks." *Id.* Mosley's injury was work related and thus covered

by worker's compensation. Mosley was injured on March 20, 2016 and placed on light duty for twelve weeks. But after that, Target put Mosley on medical leave (with worker's compensation benefits) while they engaged in the interactive process and Target contemplated how to accommodate his disability. He was employed at Target for more than six months after his light duty work ended—from June 13, 2016 until January 1, 2017—when he was terminated. Mosley's assertion that worker's compensation-related disabilities are limited to twelve weeks to reach an accommodation is not supported by record.

> Mosley asserts:
>
> there is a genuine issue of material fact as to what Target's policy actually is concerning accommodation of lifting restrictions at the distribution center and whether it results in discrimination against employee's (sic) seeking worker's compensation or if it discriminates against all employees with a disability of any kind that results in a lifting restriction.

*Id.* at 18. However, Mosley has not designated evidence to make Target's policy an issue material to this case. Mosley did not attempt to show that he was treated differently from other workers in a similar situation by designating documents relating to other worker's compensation claims filed by Target employees. He attempted to have one human resources employee explain how employees who get injured on the job are treated in comparison to employees who get injured off the job. The response he elicited does not evidence a discriminatory policy, and it resided entirely in the hypothetical, without any discussion of actual Target employees who were in the same situation as Mosley.

In order to survive summary judgment, Indiana law requires that a plaintiff alleging retaliatory discharge present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination. Mosley did

not present any such evidence.  Therefore, Target's Motion for Summary Judgment is **granted** as to Count III of Mosley's Complaint—his claim for retaliatory discharge.

### IV.    <u>CONCLUSION</u>

For the reasons stated above, Target's Motion for Summary Judgment (Filing No. 42) is **GRANTED** as to all claims.  Final judgment will follow in a separate order.

**SO ORDERED.**

Date:  8/20/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

David W. Stewart
STEWART & STEWART
david@getstewart.com

Darron S. Stewart
STEWART & STEWART
darron@getstewart.com

Heather R. Falks
STEWART & STEWART
heatherf@getstewart.com

Emily L. Connor
LITTLER MENDELSON, P.C. (Indianapolis)
econnor@littler.com

Alan L. McLaughlin
LITTLER MENDELSON, P.C. (Indianapolis)
amclaughlin@littler.com